**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TAYLOR ENERGY COMPANY LLC,** | |
| **Plaintiff,** | |
| v. | **Civil Action No. 20-1086 (JDB)** |
| **UNITED STATES OF AMERICA, acting by and through the UNITED STATES COAST GUARD NATIONAL POLLUTION FUNDS CENTER,** | |
| **Defendant.** | |

**MEMORANDUM OPINION**

As of 2004, plaintiff Taylor Energy Company LLC ("Taylor Energy") owned and operated an offshore oil and gas production platform on a leased tract in the Gulf of Mexico. Hurricane Ivan passed through the Gulf in September 2004 and, along its way, caused significant damage to Taylor Energy's oil platform, ultimately leading to the platform's collapse into the Gulf and the discharge of oil into the water and surrounding seafloor sediments.

In November 2018, Taylor Energy sought reimbursement from the U.S. Coast Guard National Pollution Funds Center ("NPFC") for money spent to clean up oil after the destruction of its platform, but the NPFC denied its claim. In April 2020, Taylor Energy brought this lawsuit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, to challenge that denial. See Compl. to Vacate & Set Aside Final Agency Action & for Other Relief [ECF No. 1] ¶¶ 3, 5–18. Specifically, Taylor Energy seeks judicial review of the NPFC's final decision rejecting Taylor Energy's Act of God ("AOG") defense to liability under the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701, which would, if accepted, entitle Taylor Energy to recoup its cleanup costs. Id. ¶ 7–9. In response, the United States, on behalf of the Coast Guard, has filed various counterclaims

1

seeking reimbursement for $43 million paid by the Oil Spill Liability Trust Fund ("OSLTF") to third parties to clean up the oil spill, as well as civil penalties and a declaratory judgment concerning past and future removal costs and natural resource damages.   See Answer & Countercls. of Def./Countercl.-Pl. United States of America ("Gov't's Answer") [ECF No. 19] ¶¶ 78–95.

Now before the Court are four preliminary motions filed by Taylor Energy and the United States: (1) Taylor Energy's motion to compel the government to file an amended answer and to strike its first affirmative defense, (2) the government's motion for leave to file an amended answer, (3) Taylor Energy's motion to strike various technical reports from the administrative record, and (4) Taylor Energy's motion to dismiss the government's counterclaims.   For the reasons explained below, the Court will grant the government's motion for leave to file its amended answer, deny Taylor Energy's motions to compel an amended answer and to strike technical reports, and grant Taylor Energy's motion to dismiss the government's counterclaims.[1]

## **Background**

In 2004, Taylor Energy was the lessee of an offshore oil and gas lease tract, known as the

---

[1] The government has also filed a motion to strike an expert report of Wade Bryant that Taylor Energy had attached to its reply to its motion to dismiss the government's counterclaims and to prohibit Mr. Bryant from testifying in this proceeding.   See Gov't's Mot. to Strike Wade Bryant's Expert Report from Taylor Energy's Reply to the Gov't's Opp'n to Taylor Energy's Mot. to Dismiss [ECF No. 47].   The government argues that, as a former federal employee who worked on the Coast Guard's response to the MC20 incident, Mr. Bryant is precluded from testifying on Taylor Energy's behalf under federal ethics laws.   See id. at 1.   Taylor Energy, in turn, has filed a motion for a court order permitting Mr. Bryant's expert testimony, see Mot. for Ct. Order Permitting Expert Test. by Wade Bryant on Behalf of Taylor Energy [ECF No. 49], and Mr. Bryant has filed a motion to intervene to respond to the government's motion to strike, see Mot. to Intervene [ECF No. 50].   These three motions have not yet been fully briefed.   Rather than rule on the merits of these motions at this stage, however, the Court will elect not to consider Mr. Bryant's report for the purpose of resolving the other preliminary motions, which are ripe for consideration.

Furthermore, the Court notes that because Mr. Bryant's testimony is not a part of the administrative record, see Index of Admin. R. [ECF No. 41-2], it is not applicable to resolving Taylor Energy's underlying claims in the instant lawsuit, see Order, July 28, 2020 [ECF No. 26].   Rather, Mr. Bryant's testimony only bears upon the issues raised by the government's counterclaims.   Hence, because the Court will dismiss the government's counterclaims on first-filed grounds, the Court will deny all three motions concerning Mr. Bryant's report and testimony as moot.   In the event that Taylor Energy later files a motion to supplement the administrative record with any report or testimony by Mr. Bryant, however, the parties and Mr. Bryant may renew their respective motions at that time.

"Mississippi Canyon 20" ("MC20"), in the Gulf of Mexico.  See Compl. ¶ 6.[2]  Taylor Energy owned and operated "an offshore, fixed steel frame oil and gas production platform situated within MC20."  Id.  That platform sustained significant damage from Hurricane Ivan in September 2004; Ivan generated "extraordinarily powerful waves" that "caused a massive progressive seafloor failure upslope of the [MC20 platform]," which in turn "destroy[ed] the platform's foundation deep beneath the seafloor."  Id.  As a result, the platform "topple[d]," and several of the oil wells that fed into the platform "rupture[d]," leading to the "discharge of oil into the Gulf of Mexico and the seafloor sediments."  Id.

Taylor Energy discovered the damage to the MC20 platform on September 16, 2004, and the next day, observed "a light sheen . . . in the area where the platform had been installed."  Id. ¶¶ 64–66.  Taylor Energy notified the Coast Guard of the missing platform and reported the apparent oil discharge to the National Response Center.  Id.  The Coast Guard thereafter designated Taylor Energy the "Responsible Party" for the MC20 oil spill, meaning that Taylor Energy would be strictly liable under the OPA for removal costs and damages resulting from that spill, unless specific statutory defenses to liability applied, see 33 U.S.C. § 2702.  See Compl. ¶¶ 67.  Since then, Taylor Energy has worked alongside the Coast Guard and other federal agencies to contain the spill, capture any oil released into the Gulf, and plug the MC20 wells to prevent further discharge of oil.  See id. ¶¶ 68–81.  As of August 2017, Taylor Energy had spent almost $486 million on cleanup efforts, of which only about $132 million had been reimbursed through insurance.  Id. ¶¶ 82–84.

---

[2] Because this suit is at the pleadings stage, the Court assumes the facts alleged in Taylor Energy's complaint are true.  See Felter v. Kempthorne, 473 F.3d 1255, 1257 (D.C. Cir. 2007).  When considering Taylor Energy's motion to dismiss the government's counterclaims, the Court will likewise assume the truth of any facts alleged by the government that are material to considering that motion.  See Barnstead Broad. Corp. v. Offshore Broad. Corp., 886 F. Supp. 874, 878 (D.D.C. 1995).

On November 15, 2018, Taylor Energy presented a reimbursement claim for its removal costs to the NPFC, invoking the AOG defense to liability under the OPA.  Id. ¶ 85.  Taylor submitted evidence that the waves generated by Hurricane Ivan qualified as an "act of God," and that these waves caused the platform's collapse.  See id. ¶¶ 85–87.  On May 14, 2019, the NPFC denied Taylor Energy's claim, concluding that the MC20 platform's destruction "was not solely caused by an act of God."  Id. ¶¶ 88–89.  Taylor Energy filed a request for reconsideration with the NPFC on July 12, 2019, but on October 10, 2019, the NPFC once again denied the claim.  Id. ¶¶ 105, 111.

Based on this final agency action, Taylor Energy brought the present lawsuit on April 27, 2020, challenging the NPFC's denial of its claim for reimbursement based on an AOG defense. Id. at 1.  Specifically, Taylor Energy avers that the NPFC violated the APA and the Due Process Clause by committing substantive and procedural errors in rejecting both the initial claim and the reconsideration claim.  See id. ¶¶ 123–80.  The government has denied the bulk of Taylor Energy's allegations, see Gov't's Answer at 13–14, and, as of July 10, 2020, filed counterclaims (hereafter, the "Counterclaims") of its own, "seek[ing] repayment from Taylor Energy as a responsible party . . . of over $43 million in removal costs and interest paid by the [OSLTF] in response to this incident," id. at 16.  The government also seeks civil penalties and a declaratory judgment establishing Taylor Energy's liability for costs and damages arising from the MC20 incident.  See id. at 16–17.  The Counterclaims are the "mirror image" of a set of claims brought about a month earlier by Taylor Energy against the government in the Eastern District of Louisiana ("EDLA") (hereafter, the "Louisiana Action").  See Compl. for Decl. J. ("Louisiana Compl.") [ECF No. 27-2].  Whereas Taylor Energy seeks a declaratory judgment in the Louisiana Action that it is not liable for the costs, penalties, and damages at issue in the Counterclaims, the Counterclaims seek

a declaratory judgment on Taylor Energy's liability, as well as the asserted costs and penalties themselves.  <u>Compare</u> Gov't's Answer ¶¶ 78–95, <u>with</u> Louisiana Compl. at 13–16.

Now before the Court are four preliminary motions.  First, Taylor Energy moves to compel the government to file an amended answer, arguing that the original answer lacked sufficient responses to various allegations in the complaint and failed to properly plead the first affirmative defense under Rule 8.  <u>See</u> Taylor Energy's Mot. to Compel the Gov't to Amend Its Answer [ECF No. 24] at 1.  Second, the United States moves for leave to file an amended answer, which seeks to address some of Taylor Energy's concerns, <u>see</u> Gov't's Mot. for Leave to File Am. Answer [ECF No. 30] at 1–2, but Taylor opposes the motion, contending that the proposed amended answer is still deficient, <u>see</u> Combined Reply Mem. in Further Supp. of Taylor Energy's Mot. to Compel & Mem. of P.&A. in Opp'n to Gov't's Mot. for Leave to File Am. Answer ("Mot. to Compel Reply") [ECF No. 33] at 2.  Third, Taylor Energy moves to strike six technical reports from the administrative record, which the company posits were improperly considered by the NPFC during the reconsideration process.  <u>See</u> Mot. to Strike Select Technical Reports from the Admin. R. [ECF No. 25] at 1–3.  Finally, Taylor Energy moves to dismiss the government's Counterclaims on a number of grounds, including the first-filed rule, improper venue, forum non conveniens, lack of maturity and ripeness, and failure to state a claim.  <u>See</u> Taylor Energy's Mot. to Dismiss Countercls. [ECF No. 27] at 1–2.  All four motions have been fully briefed and are now ripe for consideration.

<u>Analysis</u>

## I.   Taylor Energy's Motion to Compel & United States' Motion for Leave to Amend

To begin, the Court turns to Taylor Energy's motion to compel the government to amend its answer and to strike its first affirmative defense.  <u>See</u> Mem. of P.&A. in Supp. Of Taylor

Energy's Mot. to Compel the Gov't to Amend Its Answer ("Mot. to Compel") [ECF No. 24-1] at 1–3.  Taylor Energy argues that "many of the United States' responses are nonresponsive and not properly pleaded" under Federal Rule of Civil Procedure 8(b).  Id. at 2.  Likewise, Taylor Energy contends that the first affirmative defense stating that "Taylor Energy fails to state a claim upon which relief can be granted," does not satisfy Rule 8(c).  Id. at 3 (quoting Gov't's Answer ¶ 183).

The government, in turn, moves for leave to amend its answer, arguing both that the motion to compel is meritless and that "all or nearly all" of Taylor Energy's criticisms of the original answer "are mooted" by the amended answer.  See Gov't's Combined Mem. of P.&A. in Opp'n to Pls.' Mot. to Compel and to Strike ("Mot. to Amend.") [ECF No. 30-1] at 1–2.  Taylor Energy replies that the amended answer still does not adequately respond to various allegations in the complaint or plead the first affirmative defense with sufficient specificity under Rule 8(c).  See Mot. to Compel Reply at 2–3.

Under Rule 15(a), a party may amend its pleading after twenty-one days have passed from service "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Courts "should freely give leave when justice so requires."  Id.  And while "[t]he decision whether to grant or deny leave to amend is within the district court's discretion," Sanders v. D.C., 2009 WL 10693447, at *1 (D.D.C. Dec. 15, 2009), "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive, . . . repeated failure to cure deficiencies by [previous] amendments, . . . [or] futility of amendment,'" Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, Taylor Energy argues that leave to amend the answer should be denied because the proposed amendments are futile.  See Mot. to Compel Reply at 3–4.  Taylor Energy contends that

the government's amended answer still suffers from many of the same deficiencies that plagued the initial answer, including providing evasive responses that the materials in the Administrative Record are the "best evidence of their contents" rather than straightforward admissions or denials of Taylor Energy's allegations, refusing to admit or deny allegations that the government saw as either "legal in nature" or "Taylor Energy's characterizations," and denying "allegations that are demonstrably undisputed facts."   Id. at 6–8.   Taylor Energy also continues to object to the government's first affirmative defense, id., which remains unaltered by the amended answer, see Am. Answer & Countercls. ("Am. Answer Pt. I") [ECF No. 30-2] ¶ 183.[3]

These objections are unpersuasive.  Rule 8(b) requires that a party responding to a pleading "admit or deny the allegations asserted against it by an opposing party."  Fed. R. Civ. P. 8(b)(1)(B). Rule 8(b) also permits a responding party to state that it "lacks knowledge or information sufficient to form a belief about the truth of an allegation"—which "has the effect of a denial"—and to "generally deny all [allegations] except those specifically admitted."  Id. at 8(b)(3), (5).

Here, the government has asserted a general denial "[t]o the extent any allegations have not been specifically addressed" elsewhere in the amended answer.  Am. Answer Pt. I ¶ 182.  The government has thus denied all allegations in the complaint that have not been "specifically admitted," Fed. R. Civ. P. 8(b)(3), and because responses like "[the] documents speak for themselves" and "[the] allegations are legal conclusions" are "neither admissions nor denials, [those] statements do not specifically admit the allegations, and the [corresponding] allegations are denied under the general denial," Lane v. Page, 272 F.R.D. 581, 603 (D.N.M. 2011); see also

---

[3] The government's initial draft of its amended answer, see generally Am. Answer Pt. I, included some formatting errors, which are corrected in the partial document filed on August 17, 2020, see generally Attachment 1 to Notice of Errata ("Am. Answer Pt. II") [ECF No. 32-1].  The Court will cite both documents in this decision, but in granting the government's motion for leave, will also require that the government file one corrected version of its amended answer for ease of reference in future proceedings.

Bradford v. HSBC Mortg. Corp., 2011 WL 9933767, at *1 (E.D. Va. Jan. 21, 2011).

The one set of objections raised by Taylor Energy that the government's general denial does not remedy are those "denied allegations that are [according to Taylor Energy] demonstrably undisputed facts." Mot. to Compel Reply at 8.[4] For instance, Taylor Energy argues that the government's denial of the allegation in Paragraph 24 of the complaint is improper. See Mot. to Compel at 7. Paragraph 24 states:

> When the MC20A Platform was designed, constructed, and installed, American Petroleum Institute ("API") industry design standards and government regulations required that it be built to withstand the environmental loads that a "100 year storm" would impart on the platform.

Compl. ¶ 24. According to Taylor Energy, "[t]he Administrative Record (as well as countless other public records) establish that the API design standard existing at the time required the MC20A Platform to be built to withstand the environmental loads that a 100 year storm would impart on it." Mot. to Compel at 7.

But the fact that documents may exist, either in the administrative record or broader world, that support an allegation does not make that allegation so obvious or undisputed that a defendant must admit it under Rule 8(b). A defendant may be required to admit obvious or readily attainable information about itself, as well as matters of public record. See, e.g., Sibley v. Choice Hotels Int'l, Inc., 304 F.R.D. 125, 135 (E.D.N.Y 2015) (describing a hospital's street address as a matter of "public record" that defendant could not deny); Djourabchi v. Self, 240 F.R.D. 5, 12 (D.D.C.

---

[4] Taylor Energy cites Certain Underwriters at Lloyd's, London Subscribing to Certificate No. IPSI 12559 v. SSDD, LLC, 2013 WL 6801832 (E.D. Mo. Dec. 23, 2013), for the proposition that "a general denial does not make the otherwise improper response proper," id. at *5. See Mot. to Compel Reply at 9. In that case, however, the court noted that defendant SSDD actually had the necessary knowledge to admit or deny the allegations in question. Id. at *4–5. Thus, the basis for its rejection of SSDD's general denial as sufficient was the fact that defendant's answers were "inadequate and evasive" on a matter that SSDD should clearly have known. Id. at *4. In other words, SSDD claimed ignorance of a fact that it was "demonstrably undisputed" SSDD knew. Hence, Certain Underwriters supports Taylor Energy's argument that the government cannot deny in bad faith undisputable facts, but does not otherwise undermine the sufficiency of the government's general denial.

2006) ("[D]efendant, as sole proprietor of Self Corporation, should know whether his corporation or he himself was properly licensed as a general contractor in the District."). Admitting knowledge about the contents of API standards and unspecified "government regulations," however, is a different matter. There is no evidence that the government's denial was in bad faith, and it is reasonable under the language of Rule 8(b) to deny allegations, such as those in Paragraph 24, until Taylor Energy marshals specific evidence in support of the facts alleged. See Fed. R. Civ. P. 8(b) (requiring the responding party to act in "good faith" in admitting and denying pleaded allegations). Having reviewed the denials to which Taylor Energy objects—for the most part, without any specific argumentation as to the alleged failures—see Mot. to Compel Reply at 8, the Court sees no glaring deficiencies.

Finally, Taylor Energy's objection to the government's first affirmative defense is also misplaced. As compared to Rule 8(a)(2), which requires a plaintiff to file a complaint with "a short and plain statement . . . showing [he] is entitled to relief," Rule 8(c) requires only that a responding party "affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1) (emphasis added). "The purpose of [Rule 8(c)] is to put opposing parties on notice of affirmative defenses and to afford them the opportunity to respond to the defenses." Daingerfield Island Protective Soc'y v. Babbitt, 40 F.3d 442, 444 (D.C. Cir. 1994). And the D.C. Circuit has held that, although an affirmative defense must "be asserted in a responsive pleading," it "need not be articulated with any rigorous degree of specificity," and is "sufficiently raised for purposes of Rule 8 by its bare assertion." Id. at 445 (citation omitted).

After Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), district courts have split over whether the so-called "plausibility standard" applies to affirmative defenses as well and, thus, requires more than boilerplate notice pleading. See Falley v. Friends Univ., 787 F. Supp. 2d 1255,

1256–57 (D. Kan. 2011) (gathering cases).  But the D.C. Circuit has not adopted this rule, and this Court agrees with other judges in this District who have not extended Twombly in that manner. See, e.g., Moore v. United States, 318 F. Supp. 3d 188, 193 (D.D.C. 2018) (declining to extend Twombly and Iqbal to Rule 8(c)); Malibu Media, LLC v. Parsons, 2013 WL 12324463, at *3 (D.D.C. May 31, 2013) (same); Paleteria La Michoacana v. Productos Lacteos, 905 F. Supp. 2d 189, 193 (D.D.C. 2012) (same).

In sum, because none of Taylor Energy's critiques of the government's proposed amended answer are persuasive, the Court will deny Taylor Energy's motion to compel and grant the government's motion for leave to file an amended answer.

## II.    Taylor Energy's Motion to Strike

Taylor Energy moves to strike six technical reports from the administrative record: two "new" reports from Captain James Pettigrew and four reports submitted by Norwegian Geotechnical Institute, American Bureau of Shipping Group Consulting, Inc., GZA Environmental, Inc., and David Evans and Associates.  See Mem. of P.& A. in Supp. of Mot. to Strike Select Technical Reports from the Admin. R. ("Mot. to Strike") [ECF No. 25-1] at 5–7. Taylor Energy argues that "the NPFC retained these new firms prior to the issuance of the [initial] Claim Determination . . . , yet neither their existence/identities nor opinions were disclosed until the Reconsideration Denial."  Id. at 7.  This arrangement violated procedures for reconsideration set out 33 C.F.R. § 136.115(d), according to Taylor Energy, because those regulations allow only a claimant, and not the NPFC, to gather further evidence during the reconsideration process.  See id. at 8–9.  Taylor Energy also argues that the NPFC's failure to disclose any of these "new" reports prior to issuing its reconsideration decision, "completely stripped [the company] of any right to respond to the opinions or qualifications of these new 'experts'" or their reports, in violation of

relevant regulations and the Due Process Clause.  Id. at 7, 9–10, 17–19.

Taylor Energy's arguments are unavailing.  "[I]t is black-letter administrative law that in an APA case a reviewing court should have before it neither more nor less information than did the agency when it made its decision."  Hill Dermaceuticals, Inc. v. FDA, 709 F.3d 44, 47 (D.C. Cir. 2013) (internal quotation marks and citation omitted).  Here, there can be no argument that the six technical reports that Taylor Energy now seeks to strike were not "before" the NPFC "when it made its decision."  Id.  Taylor Energy's lawsuit under the APA challenges the NPFC's denial of Taylor Energy's reconsideration request, see Compl. ¶¶ 9–12; Mot. to Strike at 8, and the NPFC considered those six technical reports when it denied that request, see Mot. to Strike at 6–7; see also Index of Admin. R. at 45–46 (listing the six contested technical reports within the administrative record).

In response to this straightforward reading, Taylor Energy argues that this Court should nonetheless strike these reports because, as a product of the NPFC's "bad faith tactics," they were not properly before the NPFC and, thus, constitute a "manipulation" of the administrative record. See Mot. to Strike at 2, 12.  This is because, according to Taylor Energy, the regulations establishing the reconsideration process prohibit the NPFC from bringing forth new legal arguments and "additional support" for an initially failed claim.  See id. at 8–9.  Under 33 C.F.R. § 136.115(d), only the claimant, or its representative, may submit a "written request" for reconsideration.  That request "must be in writing and include the factual or legal grounds for the relief requested, providing any additional support for the claim."  33 C.F.R. § 136.115(d).  On Taylor Energy's reading, this regulatory language is exhaustive; when reconsidering a denied claim, the NPFC is not permitted to procure "additional support" beyond what it gathered during its review of the initial claim, see id. § 136.105(e)(13), because no explicit regulatory hook for

such action exists, see Mot. to Strike at 9.

Taylor Energy's interpretation of these regulations is untenable.  To begin, § 136.115(d) concerns claimants' rights to bring a request for reconsideration of a denied claim, see 33 C.F.R. § 136.115(c)–(d), but it does not present itself as limiting what procedures or documents the NPFC itself can employ in evaluating a reconsideration request.  Rather, it explains what items a claimant must include in its application and leaves unaddressed what, if any, further information the NPFC may consider.  In this way, § 136.115(d) aligns with § 136.105(e), which sets out the requirements for an initial claim.  Although § 136.105(e) requires that a claimant include "any . . . information deemed relevant and necessary [by the NPFC] to properly process the claim for payment," 33 C.F.R. § 136.105(e)(13), that regulatory provision likewise does not establish the exclusive means by which the NPFC can gather information to assess a claim.  Indeed, Taylor Energy describes, without quibble, the NPFC "commission[ing]" various technical reports in its consideration of Taylor Energy's initial claim.  Mot. to Strike at 4–6, 13.  Although Taylor Energy now wishes to strike these reports from the administrative record because they were not considered until the reconsideration stage, it raises no question about the NPFC's power to acquire these reports outside the procedures explicitly provided in § 136.105(e)(13) during the initial stage of the claims process.  The Court concludes that § 136.115(d) similarly sets forth procedures for a claimant to seek reconsideration, but does not limit the scope of information that the NPFC can consider when adjudicating a reconsideration request.

This interpretation also satisfies the requirements of due process.  Under the Supreme Court's decision in Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, 435 U.S. 519 (1978), a reviewing court may not require an agency to abide by procedures not mandated by statute or established by its own regulations.  See Am. Radio Relay League, Inc. v.

FCC, 524 F.3d 227, 239 (D.C. Cir. 2008); see also Pension Ben. Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990) ("Vermont Yankee stands for the general proposition that courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA.").  Taylor Energy urges just such an additional procedure, seeking to graft onto the APA and 33 C.F.R. § 136 "a meaningful opportunity to review and comment on all technical reports upon which the NPFC relied in making its determination as to Taylor Energy's Claim and Reconsideration Request." Mot. to Strike at 18.  But neither the APA nor the regulations afford such procedure, and regardless of the wisdom of Taylor Energy's approach as a policy matter, there is no general "due process" right to present rebuttal evidence or argumentation in agency proceedings.  See Bean Dredging, LLC v. United States, 773 F. Supp. 2d 63, 76 (D.D.C. 2011) (observing that any due process argument for allowing rebuttal evidence before the NPFC is "foreclosed by decades of settled jurisprudence precluding courts from imposing upon agencies specific procedural requirements not contemplated by the governing statutory and regulatory framework").[5]  Under the OPA, the relevant regulations, and the Constitution, "the NPFC retain[s] broad discretion . . . to decide whether, and if so how, to consider additional information in support of its determination."  Id. Taylor Energy's motion to strike will thus be denied.

### III.    Taylor Energy's Motion to Dismiss Counterclaims

Finally, the Court turns to Taylor Energy's motion to dismiss the government's Counterclaims.  Acting on behalf of the Coast Guard, the government seeks (1) reimbursement

---

[5] Nor is the Court persuaded by Taylor Energy's hypothetical of the NPFC "simply deny[ing] a claim in a summary fashion" and then, only on reconsideration, "com[ing] forward with evidence and multiple expert reports justifying its decision," to which the claimant could marshal no rebuttal evidence or argument.  Reply Mem. in Further Supp. of Mot. to Strike [ECF No. 39] at 6.  Aside from the fact that the Due Process Clause does not entitle a claimant under the OPA and 33 C.F.R. § 136 to rebuttal evidence or argumentation, agency action is "entitled to a presumption of regularity," Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 415 (1971), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977)—including a presumption that a claimant's initial application will be fairly considered rather than thoughtlessly rejected—that has not been overcome here.

under the OPA for approximately $43 million in removal costs associated with the MC20 platform's destruction and the subsequent discharge from the broken oil wells, (2) a declaratory judgment that Taylor Energy is the Responsible Party under the OPA and liable to the United States for damages resulting from the oil spill and oil removal costs, (3) a declaratory judgment that Taylor Energy is liable under the Clean Water Act ("CWA") for natural resource damages stemming from the MC20 incident, and (4) civil penalties under the CWA for subsequent oil discharge.  See Am. Answer Pt. II ¶¶ 78–95.  Taylor Energy moves to dismiss the Counterclaims on multiple grounds, including the first-filed rule, improper venue, forum non conveniens, lack of maturity and ripeness, and failure to state a claim.  See Mem. of P.&A. in Supp. Of Taylor Energy's Mot. to Dismiss Countercls. ("Mot. to Dismiss") [ECF No. 27-1] at 1–2.  The Court agrees with Taylor Energy's challenge under the first-filed rule and will dismiss the Counterclaims on that ground without addressing the remaining objections.

The Supreme Court has emphasized in recent years "that Article III jurisdiction is always an antecedent question," Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998), and thus that a federal court must consider potential jurisdictional defects in a case before turning to its merits, see Patchak v. Zinke, 138 S. Ct. 897, 907 (2018).  Nevertheless, "certain non-merits, nonjurisdictional issues may be addressed preliminarily, because '[j]urisdiction is vital only if the court proposes to issue a judgment on the merits.'"  Pub. Citizen v. U.S. Dist. Court for D.C., 486 F.3d 1342, 1348 (D.C. Cir. 2007) (quoting Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S. Ct. 1184, 1191–92 (2007)).  Because the "first-to-file rule is one such 'non-merits, non-jurisdictional-issue,'" Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n, 804 F. Supp. 2d 1, 5 (D.D.C. 2011) (quoting Pub. Citizen, 486 F.3d at 1348), the Court will turn directly to that challenge, notwithstanding Taylor Energy's other jurisdictional arguments.

District courts have discretion to stay or dismiss a pending suit when confronted with parallel litigation filed in two separate forums.  Handy v. Shaw, 325 F.3d 346, 349 (D.C. Cir. 2003).  In fact, the Supreme Court has stated that "though no precise rule has evolved, the general principle is to avoid duplicative litigation" between federal district courts.  Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (citations omitted).  Moreover, it is well-established in the D.C. Circuit that "[w]here two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first."  Wash. Metro. Area Transit Auth. v. Ragonese, 617 F.2d 828, 830 (D.C. Cir. 1980) (citations omitted).  However, the D.C. Circuit has warned that because "countervailing equitable considerations, where present, cannot be ignored," the rule should not be applied mechanically if the second-filed action deserves priority, Columbia Plaza Corp. v. Sec. Nat'l Bank, 525 F.2d 620, 627 (D.C. Cir. 1975).  Nonetheless, "[c]onsiderations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously."  Ragonese, 617 F.2d at 830; see also Columbia Plaza, 525 F.2d at 626 ("Sound judicial administration counsels against separate proceedings, and the wasteful expenditure of energy and money incidental to separate litigation of identical issues should be avoided.").

The parties are presently embroiled in three sets of litigation—two in the EDLA and one before this Court—addressing Taylor Energy's responsibility for the MC20 incident and the resulting oil discharge.  On December 20, 2018, Taylor Energy filed a now-consolidated action in the EDLA against the Coast Guard and others seeking to vacate an Administrative Order directing Taylor Energy to institute a containment system at the MC20 site and a subsequent Notice partially federalizing "response actions" at that site given Taylor Energy's "unsatisfactory" progress thus

far.  See Taylor Energy Co. LLC v. Luttrell, Civ. Action No. 18-14046 (E.D. La).  In that lawsuit (hereafter referred to as the "Luttrell Litigation") Taylor argues that the Order and Notice, issued in the fall of 2018, are legally invalid and challenges all subsequent actions taken to implement them, including the containment work performed by the Coast Guard's contractor, the Couvillion Group.  Id.

On April 27, 2020, Taylor Energy filed its underlying complaint in this Court (hereafter referred to as the "AOG Complaint") seeking judicial review of the NPFC's denial of Taylor Energy's reimbursement claim and invocation of an AOG defense under the OPA.  Compl. at ¶¶ 3, 26–27.  On June 2, 2020, the United States, on behalf of the Coast Guard, sent Taylor Energy a demand letter, stating that the government "is prepared to file claims" relating to the oil discharge from the MC20 incident and inviting Taylor to discuss settlement.  See Pre-filing Notice of Claims against Taylor Energy Co., LLC regarding OPA and CWA [ECF No. 27-10] at 1.  The claims specified in the letter—seeking $43 million paid by the OSLTF to third parties to clean up the oil spill, as well as civil penalties and a declaratory judgment concerning past and future oil removal costs and natural resource damages—are virtually identical to the Counterclaims now before this Court.  Compare id. at 1–2, with Gov't's Answer ¶¶ 78–95.

However, on June 15, 2020, almost one month before the government filed its Counterclaims in this District, Taylor Energy filed the Louisiana Action against the United States, acting by and through the Coast Guard and the NPFC, in the EDLA.  See Louisiana Compl. at 1. In that action, Taylor Energy seeks a declaratory judgment, inter alia, that it "does not owe any sums to [the United States] for removal costs, penalties, damages or otherwise, and that [the United States] [is] not entitled to the declaratory judgment [it] seek[s] in the Demand Letter."  Id. at ¶ 35. Taylor Energy then filed a Notice of Collateral Proceeding, stating that the Louisiana Action "is

related to and arises out of" the Luttrell Litigation because the "vast majority of the 43 million sought in the Demand Letter is attributable to the work undertaken by Couvillion . . . allegedly under the authority of" the Order at issue in the Luttrell case.  See Mot. to Dismiss at 20; Rec. Doc. 6, Civ. Action No. 20-01720 (E.D. La.).  Absent objection by the government, the Louisiana Action was then transferred to the same district judge handling the Luttrell Litigation.

On July 10, 2020, the United States filed its Counterclaims in response to the AOG Complaint before this Court.  Gov't's Answer ¶¶ 78–95.  The Counterclaims are virtually identical to Taylor Energy's claims in the Louisiana Action, except that the Counterclaims also assert claims for damages and civil penalties, not merely for declaratory relief.  Compare Gov't's Answer ¶¶ 78–95, with Louisiana Compl. at 13–16.

Taylor Energy argues that the Counterclaims should be dismissed under the first-filed rule because they are a "mirror image" of the claims asserted in the earlier-filed Louisiana Action.  Mot. to Dismiss at 1.  The government does not deny that the Counterclaims and the Louisiana Action are duplicative or that the Louisiana Action is the "first-filed" action vis-à-vis the Counterclaims. Instead, the government contends that the relevant points of comparison, for timing purposes, are the filings of the AOG Complaint and the Louisiana Action.  See Gov't's Mem. of P.&A. in Opp'n to Taylor Energy's Mot. to Dismiss Countercls. ("Opp'n to Mot. to Dismiss") [ECF No. 31] at 14. As between those actions, the government argues, the AOG Complaint is the "first-filed."  See id.[6]

The first-filed rule applies when "two cases between the same parties on the same cause of action" are pending in two different federal courts.  Ragonese, 617 F.2d at 830.  Two cases

---

[6] The government does not ask this Court to enjoin the Louisiana Action in the EDLA, but simply denies that its Counterclaims should be dismissed under the first-filed rule.  But, on July 21, 2020, the government filed a motion in the Louisiana Action to transfer that action to this District on venue and first-filed grounds.  See Mot. to Transfer Case, Taylor Energy, LLC v. United States, Civ. Action No. 20-01720 (E.D.La.).  Briefing on that motion was completed on August 11, 2020, and as of the date of this opinion, that motion remains unresolved.

implicate "the same cause of action" if "they share the same nucleus of facts." <u>Apotex, Inc. v.</u> <u>FDA</u>, 393 F.3d 210, 217 (D.C. Cir. 2002) (internal quotation marks and citation omitted); <u>see also,</u> <u>e.g.</u>, <u>Tucker v. Am. Int'l Grp, Inc.</u>, 728 F. Supp. 2d 114, 121 (D. Conn. 2010) (applying this standard under the first-filed rule); <u>Allfirst Bank v. Progress Rail Servs. Corp.</u>, 178 F. Supp. 2d 513, 518 (D. Md. 2001) (same).  A court considers "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." <u>Alaska Forest Ass'n</u> <u>v. Vilsack</u>, 883 F. Supp. 2d 136, 142 (D.D.C. 2012) (quoting <u>Apotex</u>, 393 F.3d at 217).

The Louisiana Action and the Counterclaims plainly constitute "the same cause of action" because they involve identical factual and legal issues.  <u>Compare</u> Gov't Answer ¶¶ 78–95, <u>with</u> Louisiana Compl. at 13–16.  The government, however, argues that the AOG Complaint and the Louisiana Action likewise "share a common nucleus of facts and key legal issues," and therefore that the AOG Complaint—which predated filing of the Louisiana Action—should be considered the "first-filed" action.  <u>See</u> Opp'n to Mot. to Dismiss at 14.  The Court disagrees.

Though both pertain to Taylor Energy's responsibility arising from the MC20 incident, the facts at issue in the AOG Complaint and the Louisiana Action do not constitute the "same cause of action" because they predominantly address different time periods and focus on actions taken by different entities.  The AOG Complaint seeks judicial review under the APA and the Due Process Clause of the NPFC's denial of $353 million in costs that Taylor Energy paid through August 2017 to remove oil from the Gulf.  Compl. at ¶¶ 3, 26–27.  This Court's review of that denial is confined to the administrative record.  Order, July 28, 2020.  The relevant facts concern the procedures the NPFC employed to examine Taylor Energy's entitlement to an AOG defense under the OPA and the scientific cause of the MC20 platform's collapse in 2004.

The Louisiana Action, in contrast, seeks to resolve Taylor Energy's liability for $43 million in removal costs incurred by the government and later paid for by the OSLTF.  Louisiana Compl. at ¶¶ 5, 25(f).  Almost $40 million of those costs are for Couvillion's work, starting in the fall of 2018, to build a containment system at the MC20 site.  See id.  Taylor Energy objects to these costs on several grounds—many of which have no connection to the AOG Complaint—challenging Couvillion's authority to build the containment system, the propriety and documentation of the costs, their relation to oil sourced from Taylor's wells, and the government's presentation of its claims to the OSLTF.  See id. at ¶ 40.

The Louisiana Action also addresses Taylor Energy's liability under both the OPA and the CWA for other past and future removal costs, natural resource damages, and civil penalties.  See id. at ¶¶ 28, 35.  Taylor Energy's entitlement to an AOG defense may implicate some of its liability under the OPA; but, because the government also seeks to impose liability based on an OPA provision that applies notwithstanding an AOG defense, it is not evident that Taylor Energy's right to that defense will be central to the Louisiana Action's resolution.[7]  See id.; see also 33 U.S.C. § 2704(c)(3).  Moreover, the CWA penalties at issue relate to a much broader range of facts, concerning the quantities of oil discharged after December 6, 2013 and the extent to which that discharge resulted from Taylor Energy's "gross negligence and willful misconduct."  See Gov't's Answer ¶¶ 89–90.  None of the OPA or CWA-related claims in the Louisiana Action are reviewed based on the administrative record, nor does much of the relevant evidence, concerning either the

---

[7] For example, as the government acknowledges, "Taylor's alleged act of God defense does not apply to the United States' Second Counterclaim and the Third Counterclaim for liability under Section 1004(c)(3) of the Oil Pollution Act," which imposes liability for all removal costs incurred by the United States on the "owner or operator" of any "Outer Continental Shelf" facility notwithstanding any statutory defenses afforded by the OPA, see 33 U.S.C. § 2704(c)(3).  Opp'n to Mot. to Dismiss at 16 n.9.  The United States also recognizes that the AOG defense does not apply to its fourth Counterclaim, which concerns Taylor Energy's liability under the CWA, although it says, without much specification, that the CWA claim may require consideration of "some of the same facts and circumstances at issue in the act of God defense."  Opp'n to Mot. to Dismiss at 15.

$43 million in damages or quantities of oil and conduct relevant to the CWA penalties, appear to be contained in that record.  <u>See</u> Index to the Admin. R.

The Court is also not aware of, and the United States does not cite, any case in which a party seeking review of the NPFC's denial of a reimbursement claim and entitlement to a statutory OPA defense was then required to litigate, in the same suit, that party's past and future liability under the OPA or the CWA.  So, although it may be convenient, depending on how both sets of litigation progress, to try at least some pieces of the AOG Complaint and the Louisiana Action together, these actions do not appear to be "treat[ed] as a unit" by either other parties or other courts.  <u>Cf.</u> <u>Alaska Forest Ass'n</u>, 883 F. Supp. 2d at 142.

In short, while the AOG Complaint and the Louisiana Action involve some overlapping facts, the overlap is not so substantial that the "nucleus" of facts in each action is the same.  <u>See, e.g.</u>, <u>Drake v. Fed. Aviation Admin.</u>, 291 F.3d 59, 66 (D.C. Cir. 2002) (determining two actions by plaintiff against a federal agency did not share the same nucleus of facts where they challenged the same agency regulation, but one concerned the regulation "as a whole" and the other challenged an agency determination pursuant to that regulation).  Hence, the relevant points of comparison, for timing purposes under the first-filed rule, are the filings of the Louisiana Action and of the Counterclaims in this case, and, as between those filings, the Louisiana Action is the first-filed.

To determine whether "countervailing equitable considerations" nonetheless dictate that the second-filed action should be allowed to proceed, a court balances a variety of factors.  This Court has previously considered "(1) whether all parties are present in both cases, (2) the location of witnesses, and (3) the stage of the respective proceedings," <u>Furniture Brands Int'l</u>, 804 F. Supp. 2d at 7 (citing <u>Columbia Plaza</u>, 525 F.2d at 629), as well as (4) whether one jurisdiction has more experience with the legal issues involved, <u>id.</u>, and (5) "if a suit is filed as a preemptive strike to

establish a preferred jurisdiction," Thayer/Patricof Educ. Funding, LLC. v. Pryor Res., Inc., 196 F. Supp. 2d 21, 30 (D.D.C. 2002) (citing Lewis v. Nat'l Football League, 813 F. Supp. 1, 4 (D.D.C. 1992)).

Here, the first and third considerations do not counsel either way.  All parties—Taylor Energy, the United States, the Coast Guard, and the NPFC—are present in both cases and the proceedings are at approximately the same stage.  In both actions, the claimant has filed a partial motion for summary judgment and the other party has filed a motion to dismiss.

The location of the witnesses and the pendency of the Luttrell Litigation in the EDLA, in contrast, suggest that the substance of the Counterclaims would be more conveniently resolved there.  The MC20 incident and oil discharge took place in the EDLA and all removal and containment work was performed there.  See Gov't's Answer at ¶¶ 1–3.  The United States has not identified any witnesses by location, Opp'n to Mot. to Dismiss at 21, but every key witness named by Taylor Energy is based in the EDLA, as both Taylor Energy and the Coast Guard section responsible for addressing the MC20 incident reside there, see Mot. to Dismiss at 18.

Furthermore, "although there is no question that this Court is competent" to decide the questions raised in the Counterclaims, see Furniture Brands Int'l, 804 F. Supp. 2d at 7, given that Taylor Energy is currently challenging in the Luttrell Litigation the Coast Guard's authority to implement a containment system at the MC20 site and its subsequent actions relating to that system, the Court sees some benefit to having the same judge also resolve the Counterclaims concerning the government's costs to build that system and the civil penalties for any continuing oil discharge not yet contained.  See id. (explaining that "when another court is actively wrestling with the issues presented" it is "[f]ar better for the litigation to proceed in a single location" as the "possibility of inconsistent results cannot be ignored") (citation omitted).  This would not only

avoid inconsistent judgments, but also best minimize any duplicative litigation of preliminary matters across the Luttrell Litigation and the Counterclaims.[8]

The Court does weigh heavily the government's arguments that Taylor Energy filed the Louisiana Action in response to its demand letter notifying Taylor of its intent to sue.  See Opp'n to Mot. to Dismiss at 16–17.  That a party has preemptively filed a declaratory judgment action to "establish a preferred jurisdiction" in anticipation of a pending lawsuit often counsels against applying the first-filed rule.  See, e.g., Thayer/Patricof Educ. Funding, 196 F. Supp. 2d at 30; see also Blackhawk Consulting, LLC v. Fed. Nat'l Mortg. Ass'n, 975 F. Supp. 2d 57, 63 (D.D.C. 2013) (explaining that courts "must be rigorous in determining whether one party has launched a preemptive strike against the other" as "an end run around [the other's] choice of forum") (internal quotation marks and citation omitted).  Were this the only equitable consideration, the Court would hold Taylor Energy to its decision to bring the AOG Complaint in this District and thereby open itself up to Counterclaims here—especially since Taylor Energy could have brought that complaint in the EDLA, see 33 U.S.C. § 2717(b) (authorizing venue under the OPA "in any district in which the discharge or injury or damages occurred, or in which the defendant resides").  However, ultimately, the Court does not find that this consideration tips the balance against applying the first-filed rule here.

For starters, Taylor Energy knew that the government intended to file claims, but not where or when those claims would be brought.  See St. Paul Fire & Marine Ins. Co. v. R&Q Reinsurance Co., Civ. Action No. 15-5528, 2016 WL 3087379, at *4 (E.D. Pa. June 2, 2016) (discounting the

---

[8] For example, the government's motion to strike an expert report from Taylor Energy's reply brief on the instant motion shows just one example of the potential duplicative litigation that could arise in the Luttrell Litigation and the Counterclaims.  See Gov't's Mot. to Strike Wade Bryant's Expert Report from Taylor Energy's Reply to the Gov't's Opp'n to Taylor Energy's Mot. to Dismiss.  As the government notes, that expert report has been served in the Luttrell Litigation, too, and therefore may, depending on how that litigation progresses, be subject to the same objections there.  See Gov't's Mem. in Supp. of Mot. to Strike Wade Bryant's Expert Report from Taylor Energy's Reply to the Gov't's Opp'n to Taylor Energy's Mot. to Dismiss [ECF No. 47-1] at 4 n.1.

relevance of an anticipatory filing in such circumstances).  The government criticizes Taylor Energy for filing the Louisiana Action right after the parties met to discuss settlement.  Opp'n to Mot. to Dismiss at 16.  But the government then waited almost a month to file its Counterclaims, suggesting it had other reasons—aside from false hopes of reaching a settlement—to delay in filing its claims.  Cf. Hanson PLC v. Metro-Goldwyn-Mayer Inc., 932 F. Supp. 104, 108 (S.D.N.Y. 1996) (declining to apply first-filed rule where one party had "lull[ed]" the other "into believing that peace negotiations would precede any litigation").  Moreover, although the government characterizes the Louisiana Action as a strategic attempt at forum shopping, see Opp'n to Mot. to Dismiss at 16, what tactical advantage, if any, Taylor has gained from filing that suit in the EDLA, rather than this District, is not evident.  Koresko v. Nationwide Life Ins. Co., 403 F. Supp. 2d 394, 402 (E.D. Pa. 2005) (applying first-filed rule to allow an anticipatory suit to proceed where no "substantive advantage" inured from litigating in the first-filed forum); EEOC v. Univ. of Pennsyl., 850 F.2d 969, 975–77 (3d Cir. 1988) (declining to apply first-filed rule where preemptive lawsuit was brought to evade unfavorable precedent).  Rather, the Court finds that Taylor Energy had at least some good reason—denoted explicitly in its complaint—to bring the Louisiana Action in the EDLA given its connection to the Luttrell Litigation, which had been pending there for over year. See Louisiana Compl. ¶ 5.

Dismissing the Counterclaims would not, at this stage, prejudice the government, as it may present the same counterclaims for damages and civil penalties in the Louisiana Action.  See Intervet, Inc. v. Merial Ltd., 535 F. Supp. 2d 112, 115 (D.D.C. 2008).  Therefore, in light of the earlier filing of the Louisiana Action and the equitable considerations outlined above, the Court

will dismiss the government's Counterclaims without prejudice on first-filed grounds.[9]

## **Conclusion**

Accordingly, the Court will grant the United States's motion for leave to amend its complaint, deny Taylor Energy's motions to compel and to strike various reports from the administrative record, and dismiss the United States's counterclaims.  A separate order will be issued on this date.


/s/
_____
JOHN D. BATES
United States District Judge

Dated: <u>October 14, 2020</u>

---

[9] The government has also filed a motion seeking summary judgment on its second counterclaim.  <u>See</u> Gov't's Mot. for Partial Summ. J. [ECF No. 43].  In dismissing the government's Counterclaims, the Court will deny this motion as moot.